```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                         HOUSTON DIVISION


JOHN P. WILLIAMS,               §
TDCJ-CID NO. 712408,            §
                                §
          Plaintiff,            §
                                §
v.                              §    CIVIL ACTION NO. H-08-0259
                                §
CERTAIN INDIVIDUAL EMPLOYEES    §
OF TDCJ, et al.,                §
                                §
          Defendants.           §
```

## MEMORANDUM OPINION AND ORDER

John P. Williams, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID) filed this civil rights action under 42 U.S.C. § 1983 alleging that TDCJ-CID officials at the Jester III Unit violated his constitutional rights by denying medical attention three days after his left leg was amputated.  He specifically alleges that he was denied pain medication despite his obvious distress.  Defendant Fred Cabral, the nurse on duty, filed a Motion for Summary Judgment (Docket Entry No. 87) supported by records and affidavits. Cabral's motion will be denied for the reasons explained below.

### I.  Facts, Claims, and Procedural History

Williams, who suffers from diabetes, hypertension, and arteriosclerosis, was taken to the University of Texas Medical

Branch John Sealy Hospital ("UTMB") for an operation on his left leg.  On May 15, 2006, surgeons amputated Williams' left leg below the knee.  No complications were reported after the operation, and four days later Williams was returned to the TDCJ-CID Jester III Unit with prescriptions for pain medication.

Williams alleges that he was confined to a transient cell in the administrative segregation section at Jester III and that he was not given medical attention.  He specifically asserted in his original complaint that the guards were deliberately indifferent to his need for medical care by denying his request for pain medication and his access to infirmary medical help.  Williams also alleged that he did not see a nurse for nearly 20 hours after he was discharged from the hospital and nearly 18 hours after he arrived at Jester III.

The court ordered service on the defendants, and Keith Baker and Jedvanni Ortiz, TDCJ-CID correctional officers, filed an answer and a motion for summary judgment.  The court granted the motion after finding that Ortiz and Baker were not authorized health workers.  The court further found that the guards had relayed Williams' complaints and requests for medical attention and that they did not delay Williams' access to medical care.

Williams appealed the court's decision.  The United States Court of Appeals for the Fifth Circuit upheld the dismissal of Ortiz and Baker noting that Ortiz attempted to help Williams and

that Williams' requests were relayed to the duty nurse. <u>Williams v. Certain Individuals of the TDCJ-CID Jester III Unit</u>, No. 09-20470 (5th Cir. 2010). The Fifth Circuit also upheld dismissal of an unnamed defendant who worked at the infirmary admissions desk noting that, like Ortiz and Baker, the defendant was not a health care worker, and the prison duty nurse was notified about Williams' complaints and his condition. However, the Fifth Circuit held that an unnamed prison duty nurse should not have been dismissed because the records showed that there was a delay of almost 16 hours before Williams was given pain medication. The court held that Williams had offered proof that the nurse knew that Williams needed pain medication and medical attention and yet failed to provide the care. The unnamed nurse was not entitled to qualified immunity because as a health care worker the nurse would have known that denying pain medication to a post-operative amputee would cause him to suffer substantial pain. <u>Id.</u> at 11, <u>citing</u> <u>Easter v. Powell</u>, 467 F.3d 459, 464 (5th Cir. 2006).

Pursuant to the Fifth Circuit's mandate, the court ordered the Attorney General to identify and locate the unnamed nurse. After some delay the nurse was identified as Fred Cabral, RN. Cabral later filed an answer and the pending motion for summary judgment.

**II.  Cabral's Arguments and Supporting Evidence**

Cabral moves for summary judgment because he did not violate Williams' constitutional right to medical care. He also contends

-3-

that he is entitled to immunity for monetary claims made against him in his official capacity and that qualified immunity shields him from liability to claims made against him in his individual capacity.

Cabral has submitted the following in support of his motion:

Exhibit A:   Williams' Medical Records (478 pages) (Docket Entry No. 88, Sealed)

Exhibit B:   Williams' Medication History (47 pages) (Docket Entry No. 88-8, Sealed)

Exhibit C:   Cabral's Affidavit (Docket Entry No. 87-2)

Cabral contends that Williams has failed to present any evidence, other than conclusory statements, that demonstrates that Cabral was deliberately indifferent to his medical needs. Cabral asserts that the failure to place Williams in the infirmary upon his return to Jester III occurred because Williams was brought to the unit after hours.

Cabral admits that he signed Williams' medical chart on May 19, 2006, but denies that the chart contained any information indicating that he knew or had reason to know that Williams needed to be housed in the infirmary or that Cabral had failed to treat Williams (Docket Entry No. 87 at 8). Cabral argues that it is likely that he had no idea that Williams was in pain while he was housed in the transient cell.

Cabral also challenges Williams' allegation that he went to the infirmary to seek medical attention because Williams' placement in administrative segregation would have prevented him from doing

-4-

so.  Cabral contends that Williams' medical records refute his allegations that he went three days without medication and that he knocked himself out by hitting his head against the wall.

Cabral contends that even if Williams could show that Cabral failed to give him his medication, there is no evidence that this deprivation was caused by Cabral's deliberate indifference.  While Cabral concedes that Williams was placed in a transient cell rather than the infirmary, he asserts that Williams was seen by medical staff several times a day and that he was given pain medication along with his other routine medication.  Cabral further argues that Williams has failed to show that he was aware of a serious risk to Williams' safety and ignored the risk.

Cabral contends that he is entitled to qualified immunity because Williams has failed to show that Cabral was personally involved in the alleged deprivation.  He further argues that Williams has failed to show that Cabral's actions were unreasonable in light of the information he possessed.  Consequently, Cabral claims that he is entitled to judgment as a matter of law.

### III.  Summary Judgment Standard

Summary judgment is appropriate if the submissions show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c).  In deciding if a fact issue exists, the court reviews the evidence in the light most favorable to the non-moving party.

Hernandez v. Velasquez, 522 F.3d 556, 560 (5th Cir. 2008), citing Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co., 336 F.3d 410, 412 (5th Cir. 2003).

### IV. **Williams' Medical Records**

Although the court has previously reviewed portions of Williams' medical records, Cabral has submitted what appears to be a more extensive account of Williams' medical condition and treatment given to address his various maladies. Therefore, the court again reviews the facts in light of the additional information.

Williams' medical records (Docket Entry Nos. 88-2 through 88-8) indicate that he is in his sixties[1] with a history of diabetes, hypertension, significant coronary artery disease, and peripheral artery disease. His symptoms were first observed in 2002 (Docket Entry No. 88-2 at 27). Surgeons had previously amputated Williams' right leg below the knee as a result of cellulitis apparently caused by his poor circulation (Docket Entry No. 88-2 at 2). Williams later began having similar difficulties with his left leg, which resulted in a below the knee left leg amputation on May 15, 2006, at the John Sealy Hospital in Galveston. Id. There were no complications during the operation,

---

[1] There are conflicting entries in the records regarding Williams' age. See, e.g., Docket Entry No. 88-2 at 2 (60 years on May 18, 2006); Docket Entry No. 88-6 at 38 (60 years on July 5, 2006); Docket Entry No. 88-2 at 34 (56 years on July 26, 2006).

and Williams appeared to have tolerated the procedure. Several days later Williams was discharged from John Sealy with several prescriptions including one for an analgesic or pain reliever, Tylenol #3.[2]  See Docket Entry No. 88-2 at 9.

Williams was returned to Jester III on Friday evening, May 19, 2006, where the medical staff there was well aware of Williams' longstanding maladies.  Id. at 35.  Cabral admits that he was also aware of Williams' condition prior to May 19 (Docket Entry No. 87-2 at 2).  Cabral signed the Nurse Chain Review Chart on May 19, 2006, which indicated that Williams had undergone a below-the-knee amputation.  (Docket Entry No. 88-2 at 27-28)

Williams alleges that when he arrived at Jester III he notified security personnel that he was in pain because of the recent amputation.  He stated that he needed to be taken to the infirmary and be administered pain medication.  Instead, he was placed in an isolation cell for the night.  When Williams stated that he was about to pass out, one of the guards answered that Williams could not be moved because they were on lockdown. Williams alleges he was in such agony that he beat his head against the wall in order to knock himself out.

Cabral contends that the records do not support Williams' allegation of a head injury, but Cabral points to no evidence

---

[2] See Mosby's Nursing Drug Reference, 1161 (2008) (Tylenol #3 contains codeine); Dorland's Medical Dictionary, Edition 25, 179 (1995) (codeine is a narcotic used as an analgesic).

contradicting Williams' claim that he endured physical suffering during the night of May 19-20, 2006. Cabral reiterates that Williams was given Tylenol #3 with Codeine starting at 11:50 a.m. on May 20, 2006 (Docket Entry No. 88-8 at 34). The record indicates that Williams received four doses of the pain killer over the next 48 hours. Id. What is missing is any record indicating that Williams was administered pain medication from the time of his arrival at Jester III at approximately 10:30 p.m. on May 19, 2006, until 11:50 a.m. on May 20, 2006. Nor has Cabral pointed to any evidence indicating that Williams was seen by any health care worker during that period.

## V. Analysis

Williams' section 1983 claim against Cabral is based on a prisoner's right not to be denied medical care in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 97 S. Ct. 285, 291 (1976). An actionable complaint of denial of adequate medical care must be predicated on "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 292. A serious medical need is one for which treatment has been prescribed or one for which the need is so apparent that even an untrained laymen would recognize that care is required. Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006); Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005).

A showing of negligence or medical malpractice is not sufficient to support a finding of deliberate indifference. <u>Farmer v. Brennan</u>, 114 S. Ct. 1970, 1978 (1994); <u>Hall v. Thomas</u>, 190 F.3d 693, 697-98 (5th Cir. 1999). On the other hand, the plaintiff is not required to prove deliberate actions undertaken for the very purpose of causing harm. See <u>Farmer</u>, at 1978. What must be shown is that the defendant was aware that the prisoner's health was in danger and that the defendant knowingly ignored the danger. <u>Farmer</u>, at 1979. A trained health worker violates the deliberate indifference standard if he acts in such a manner that delays or denies medical attention to a prisoner who obviously needs immediate help. See <u>Bias v. Woods</u>, 288 Fed.Appx. 158 (5th Cir. 2008).

The evidence establishes that Cabral and the medical staff at Jester III were aware of Williams' condition at the time of the incident. (Docket Entry No. 88-2 at 2, 35) Furthermore, Williams' medical record of the recent amputation along with his extensive post-operative treatment before he was returned to Jester III would have provided ample notice that he had serious health needs that deserved attention. See <u>Coleman v. Rahija</u>, 114 F.3d 778, 784 (8th Cir. 1997). Williams' diabetic condition alone would have required some monitoring. <u>Lolli v. County of Orange</u>, 351 F.3d 410, 420-21 (9th Cir. 2003). Given the circumstantial evidence indicating Williams' condition and Cabral's position of responsibility, a reasonable fact-finder could conclude that Cabral knew of a

-9-

substantial risk to Williams' health from the very fact that the risk was obvious.  McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999).

Williams alleges that he was locked in a cell.  Like all prisoners, Williams could not seek out medical help of his choosing; he had to rely on what the prison medical staff provided. Estelle, 97 S. Ct. at 290.  Williams' needs were more compelling than those of a typical prisoner needing medical attention because Williams had just lost his lower leg.  Cabral, who was a registered nurse on duty on the night in question, had an obligation to physically evaluate Williams, or at least to check on Williams to assure that he was not experiencing any difficulties with his stump.  Kaufman v. Carter, 952 F. Supp. 520, 526 (W.D. Mich. 1996). The evidence showing the extensive treatment given to Williams before his return to Jester III and the attention given to him after the night of May 19-20, 2006, supports a finding that his medical needs were serious and that Cabral as the nurse on duty was aware of the serious needs but ignored them.  McElligott, 182 F.3d at 1255.

Cabral asserts that he is entitled to qualified immunity.  In determining whether a defendant is entitled to qualified immunity, the court inquires into whether (1) the defendant's conduct violated a constitutional right, and (2) the right was clearly established at the time of the alleged infraction.

The court has previously determined that Williams has alleged sufficient facts to indicate that his right to reasonable medical care was violated and that there is sufficient evidence to support a triable issue regarding the violation. Prisoners' rights to reasonable medical care were clearly established at the time of the incident in question. Estelle, 97 S.Ct. at 290. Although prison officials are protected from liability for acts or omissions that are the result of mistake or negligence, qualified immunity does not protect officials who are "'plainly incompetent or those who knowingly violate the law.'" Cozzo v. Tangipahoa Parish Council-President Gov't, 279 F.3d 273, 284 (5th Cir. 2002), quoting Malley v. Briggs, 106 S.Ct. 1092, 1096 (1986). The court concludes that there is a fact issue as to whether Cabral was deliberately indifferent to Williams' medical needs. Consequently, the motion for summary judgment regarding Cabral's individual liability with regard to violation of Williams' right to care for his serious medical needs will be denied.

Cabral has also asserted immunity as to the claims asserted against him in his official capacity. A suit against a defendant in his official capacity is, in reality, a suit against the government entity that the defendant serves. Hafer v. Melo, 112 S. Ct. 358, 361 (1991). The Eleventh Amendment generally bars suits in federal court by citizens against their states and state agencies. Pennhurst State School & Hosp. v. Halderman, 104 S. Ct.

-11-

900, 908 (1984); Hirtz v. Texas, 974 F.2d 663, 665 (5th Cir. 1992). Therefore, claims asserted against Cabral in his official capacity will be dismissed.

### VI.   Conclusion

The court **ORDERS** the following:

1. The plaintiff's Notification and Request for Clerical Correction to Defendants' Document "Defendant Cabral's Response to Plaintiff's Request for More Discovery" (motion for clarification) (Docket Entry No. 85) is **GRANTED**.

2. Defendant Fred Cabral's Motion for Summary Judgment (Docket Entry No. 87) is **GRANTED** as to Williams' claims against Cabral in his official capacity, and is otherwise **DENIED**.

3. The court appoints Anthony Kaim, Gibbs & Bruns LLP, 1100 Louisiana, Suite 5300, Houston, Texas 77002, telephone 713-751-5249, fax 713-750-0903, e-mail akaim@gibbsbruns.com, to represent the plaintiff in the proceedings, including trial if necessary.

4. The clerk will provide a copy of this Memorandum Opinion and Order to Mr. Kaim.  At Mr. Kaim's request the clerk shall provide a copy of the court's file to Mr. Kaim electronically or in paper form.

5. The court will conduct a scheduling conference on October 13, 2011, at 3:15 p.m., in Court Room 9-B, 9th Floor, United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002.

**SIGNED** at Houston, Texas, on this 20th day of September, 2011.

SIM LAKE
UNITED STATES DISTRICT JUDGE